Jacob Hoover, Tutor, *v.* James Q. Richards and Wife.

A petition may be amended so as to change the action from a possessory to a petitory one.

A sale *per aversionem* conveys all the land between the designated boundaries, without regard to the number of acres mentioned; but the sale of a tract of a certain number of acres, between certain limits, qualified by the expression ' so as to include the said number of acres,' will not be considered a sale *per aversionem*, but a sale of the number of acres specified.

In this case the defendants appeal from a judgment of the District Court for the parish of Concordia, confirming the title of the minors represented by the plaintiff, to the land in question. *Pierse*, J., presiding.

*Farrar* and *Stacy*, for the plaintiff.

*Lawrence*, for the defendants and appellants.

Bullard, J. This is a petitory action, in which the plaintiffs as-

sert title to a small lot of land, described as lot No. 31, township No. 3, of range No. 8 East, in the land district north of Red river, which they allege is unjustly possessed and detained by the defendants.

The defendants first excepted to the form of the action as neither petitory nor possessory, and at the same time pleaded the title of the wife. The petition was then amended by leave of court so as to make the action clearly petitory, the plaintiff praying for judgment on his title. The amendment was, we think, properly admitted. The plaintiff will be considered as having renounced his possessory action, and of this the defendant has no reasonable ground to complain, inasmuch as it makes him possessor until the plaintiff shall have shown a better title. Code of Pr., 54.

The defendants answered to the merits, and denying the plaintiffs' right, averred that the title to the lot of land in dispute had been confirmed to Thomas Harman by commissioner's certificate.

The plaintiffs exhibit a patent for the lot described in the petition, together with lot thirty-three in the same township and range, containing together 833 38-100 acres, in favor of Peter Little, dated January 19, 1833, and a sale from the grantee to John Hoover, and the last will of the latter, by which all his estate, real and personal, was bequeathed in equal and undivided proportions, to his wife and three sons, Elias, John W. and James Graham Hoover, whose tutor prosecutes this suit. It is also shown that the children inherited from their mother.

The plaintiffs therefore have shown a title in themselves of the highest dignity to the *locus in quo,* and it only remains to enquire whether the defendants have shown a better title out of the government, as averred by them.

They rely upon a commissioner's certificate, dated in 1811, confirming the claim of Harman to the land in controversy as part of a tract to which he had an inchoate title from the Spanish government. The certificate purports to confirm Thomas Harman in his claim to a tract of land containing three hundred and twenty superficial *arpens,* equal to 270 80-100 American acres, founded on a *requête* and permission to settle, &c., situated in the county of Concordia, on the west margin of the Mississippi river, *bounded on the upper side by land of Samuel Phipps, and on the lower by land of*

*John Sandal, having a front on the river of about eight ar-pens,* with the depth of forty, so as to include the aforesaid quantity of three hundred and twenty superficial arpents, having such forms and marks, natural and artificial, as shall be represented in a plat thereof to be returned by the principal deputy surveyor of said district, &c. It appears that when the survey was made with a view to locate the land confirmed to Harman, there was found between the lands of Phipps and Sandal more than 320 *arpens,* and that the remainder was returned as public land on the township plat, and subsequently bought of the government by Little, under whom the plaintiffs hold, who obtained the patent given in evidence.

It is urged by the defendants' counsel, that the commissioners confirmed the claim of Harman to all the land between Sandal and Phipps more or less, and that the title of the defendants is in the nature of a purchase *per aversionem,* in which this court has repeatedly held that all the land passes which is to be found between the designated boundaries, without regard to the enumeration of number of arpents.

Such is indeed the well settled doctrine in sales *per aversionem,* as recognized by this court in numerous cases, to which our attention has been called by the counsel. It is however not so clear that the present would be considered as a sale *per aversionem,* if the grantor had been an individual, and the sale intended to constitute the ultimate proof of title. The last expressions used, to wit : ' so as to include the aforesaid quantity of three hundred and twenty superficial *arpens,*' would seem to control the previous one setting out the adjacent proprietors and limiting the grant to a superficies of 320 *arpens,* situated between those two tracts. Be that as it may, we are clearly of opinion that the certificate was not final; that upon the return of a regular survey, according to the terms of the certificate, the claimant was entitled to a patent for 320 arpents only. It accordingly appears that when the claim was located, Harman got his quantity, and the patent of Little covers the rest of the land between the two tracts.

If the confirmation had been made with reference to and in conformity with a survey of Peter Walker, which is said to have been made in 1803, but not shown, and it had appeared that the whole of the land between the two adjacent proprietors, amounting to more

than 320 *arpens*, had been designated for the grantee, the case might have been different, and probably the title of Harman to the whole would have been regarded as complete from the date of the act of Congress confirming the report of the commissioners. It would have been a grant by Congress of a tract with definite and specified boundaries, which we held in the case of *Boatner* v. *Walker*, 11 La. 582, was equivalent to a patent.

But the case appears to us more analogous, so far as it relates to the location of it by the operations of the surveying department, to the case of *Slack* v. *Orillion*, 11 Idem, 590, in which we held that the patent must prevail.

*Judgment affirmed.*